BAXTER, Respondent, vs. KRAINIK, Appellant.

*November 18—December 12, 1905.*

*Negligence: Discharge of firearm: Frightening horses: Court and jury: Special verdict: Evidence: Admissions: Cross-examination: Improper remarks of counsel: Objections and exceptions.*

1. In an action for personal injuries sustained by reason of the frightening of plaintiff's horses by the discharge of a revolver, it is *held* upon the evidence to have been a question for the jury whether defendant fired the revolver intentionally or negligently.

2. Refusal to submit for special verdict questions merely evidentiary in character or which, under the charge, are covered by the questions actually submitted, is not error.

3. In an action for injuries alleged to have been caused by the negligent discharge of a revolver, plaintiff relied upon admissions made by defendant in English, and defendant claimed that he could not speak or understand English. Witnesses testified that they asked defendant what he shot for, but could not make him understand, and that they could not understand him, but a little girl with him said he shot for fun. The court refused to strike out this answer. *Held,* error.

4. Witnesses also testified that after the accident they went to defendant's house, and at first inquired about some insurance, as they did not wish to let him know that they were there in plaintiff's interest; that later, in answer to their questions, defendant told them in English that he shot into the ground for fun, to see how the revolver worked. On cross-examination of one of such witnesses the court excluded questions as to what and how much was said about insurance and whether defendant conversed freely in English about it. *Held,* error.

5. In an action for injuries alleged to have been caused by the negligent discharge of a revolver, it was error to permit plaintiff's

counsel, in his argument to the jury, to refer to specific acts,. not in evidence, of a boy who at the same term of court had pleaded guilty as to a shooting accident, and to say "That young boy is over in jail paying the penalty of his careless- ness," etc.

6. Where an objection to permitting counsel to make remarks on a certain subject is overruled and exception taken, it is not necessary to repeat the objection to his continued remarks on that subject.

APPEAL from a judgment of the circuit court for Langlade county: JOHN GOODLAND, Circuit Judge. *Reversed.*

This action is brought to recover damages caused by the al- leged negligence of the defendant. The complaint is to the effect that the plaintiff was a farmer, and on August 22, 1903, was engaged in cutting and harvesting grain upon the eighty acres of land described, with a self-binder and heavy team of horses; that the premises abut upon and are bounded on the east by a highway running north and south; that the plaintiff was driving the machine easterly on said premises toward said highway and near the fence between the premises and the highway; that the defendant was driving on said highway from the south in a northerly direction toward the plaintiff, with a team and light wagon, and having on his per- son and in his possession a revolver; that the plaintiff pro- ceeded with due care on his course, and had reached said fence between the highway and said premises, and was turn- ing the corner south, when the defendant reached a point in said highway opposite to plaintiff and in close proximity to him and his said team; and while in such position said de- fendant, knowing the situation of the plaintiff, and while said machine was in gear, without any warning to him, negli- gently, carelessly, and without the exercise of due care, in utter disregard of the plaintiff's rights, fired said revolver and thereby caused the plaintiff's team to become frightened, un- manageable, and to run away; that by reason of said negli- gence of the defendant the plaintiff was thrown from the seat

of said machine forward and down onto the cutter bar; and that his left arm was mangled and torn so that it had to be amputated, and his lower limbs were cut and lacerated, and his body bruised and injured, whereby he suffered great damage, for which he prayed judgment. A demurrer to the complaint having been overruled, the defendant answered by way of admissions, denials, and counter allegations.

At the close of the trial the jury returned a special verdict to the effect (1) that the plaintiff was injured by being thrown from a binder in consequence of the team running away on August 22, 1903; (2) that the running of said team was caused by the discharge of a revolver in the hands of the defendant; (3) that such revolver was fired intentionally by the defendant; (4) that the firing of such revolver was negligence on the part of the defendant; (5) that such negligence of the defendant was the proximate cause of the plaintiff's injury; (6) that the plaintiff had sustained damages by reason of such injury in the sum of $1,750. From the judgment entered upon such verdict for the amount stated in favor of the plaintiff, the defendant appeals.

*T. W. Hogan,* for the appellant.

For the respondent there was a brief by *Foster & Morson,* and oral argument by *H. F. Morson.*

CASSODAY, C. J.  1. It is claimed that the third, fourth, and fifth findings of the jury, to the effect that the revolver was fired intentionally and negligently by the defendant and that such negligence was the proximate cause of the plaintiff's injury, are not sustained by the evidence, and hence that the court erroneously refused to direct a verdict in favor of the defendant or to set aside the verdict and grant a new trial. There is testimony on the part of the defendant tending to prove that the defendant never owned a revolver and never carried or shot a firearm before; that the revolver in question was a self-acting, 32-caliber revolver and belonged to his

nephew, who some weeks before had left it at a gunsmith's for repair, where it remained until the day in question, when, at the request of his nephew, he got it and left it at a hardware store to be supplied with cartridges that would fit the same; that the defendant took the revolver from the store, not knowing that there was any load in it, and placed it in an empty grain sack in his wagon and shortly after started for home; that when near the place of the accident he stooped over and attempted to get the revolver out of the bag, and while raising up it accidentally went off. On the part of the plaintiff there was evidence tending to prove that the shot was fired when the plaintiff's team was close to the road fence, and that the defendant and his team were in the road right opposite, and that, soon after, the defendant admitted that he shot the revolver off into the ground to see how it worked, for fun. Whether a person who fires off a revolver intentionally or negligently is liable for the consequences depends upon the circumstances under which the shot is fired. Thus it is said by a standard text-writer, that, if the shooting "be done by soldiers in a camp where such shooting is customary, then there is no liability if a person passing in the neighborhood is nonnegligently hit. . . . But a person who shoots at a thoroughfare, without notice to travelers, he not being required by official duty to shoot, is liable for the consequences arising if a person passing on the thoroughfare is hit." Wharton, Negligence (2d ed.) § 110. See, also, § 882. Under the evidence in the record it was a question of fact for the jury as to whether the revolver was intentionally or negligently fired off.

2. It is claimed that the special verdict did not cover all the issuable facts in the case, and that other questions requested should have been submitted. Among such requests were questions as to whether the defendant had reason to apprehend or expect that the revolver was loaded; as to whether he had reason to expect or apprehend that the discharge of a revolver at the time and place described would be likely to scare a

team of horses attached to and operating a self-binder in an adjoining field; as to whether a man of ordinary intelligence and prudence ought to have reasonably expected that the discharge of the revolver would scare the team. It has often been said by this court that the form of the verdict is very much in the discretion of the trial court. Some of the questions so suggested were evidentiary in their character, and hence have been repeatedly condemned by this court; and all were covered by the questions which, under the charge of the court, were submitted to the jury.

3. Error is assigned for the improper admission and rejection of testimony as to whether the defendant intentionally or accidentally discharged the revolver. It was a vital question in the case. The plaintiff relied upon admissions made by the defendant in the English language. The defendant claims that he could not speak or understand the English language. Two witnesses testified to the effect that, immediately after the shooting, they went to the wagon where the defendant was, and asked him what he shot for, but could not make him understand; that he spoke in his own language, which they could not understand; that the little girl who was in the wagon with him said he shot for fun; and the court refused to strike it out. Two or three days after that, one of those witnesses and his wife testified to the effect that they went to the house of the defendant and inquired about some insurance, in the first place; that they did not want to let the defendant know what they came there for; that they went there to identify the man for the plaintiff; that, in answer to their questions, the defendant told them in the English language that he shot off the gun into the ground for fun, to see how it worked. On cross-examination of the wife the court excluded testimony as to what her husband said in that conversation about insurance, whether the defendant conversed freely in English about insurance, and as to the length of the conversation on insurance. Some of such rulings were made

after counsel for the plaintiff had stated that he made no objection to such questions because the defendant claimed that he could not understand the English language. Such rulings were not only erroneous but very prejudicial to the defendant.

4. Error is assigned for improper remarks of plaintiff's counsel in his closing argument to the jury. He was allowed, against objection, to read as testimony of the defendant what was in fact testimony of one of the plaintiff's witnesses. So counsel for the plaintiff was allowed, against objection, to state to the jury specific acts of a young boy who had pleaded guilty of an accident which happened in the woods a few months before, and then said:

"That young boy is over in jail paying the penalty of his carelessness, while counsel stands up before you and says nobody has ever read of such an accident of this kind, and objects to my calling your attention to the fact that we have an instance of it right here, this term of court. It is just such carelessness of this kind that ought to be brought to account. It is careless and negligent use of firearms that people should be held to account for. They are dangerous under any circumstances."

True, there was no exception to the remarks last quoted. But the objection and exception taken related to the same matter, and the defendant's counsel was excusable for not repeating such objection and exception. Such remarks were irrelevant and necessarily damaging after having been thus approved by the court.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for a new trial.